UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 06-208 (JMR/JJG)

UNITED STATES OF AMERICA,

        Plaintiff,

v.

JAMES BROCK WILLIAMS,

        Defendant.

**REPORT AND RECOMMENDATION**

APPEARANCES: Chris S. Wilton, Assistant United States Attorneys, on behalf of Plaintiff United States of America; Nancy R. Vanderheider, Esq., for Defendant James Brock Williams

---

JEANNE J. GRAHAM, United States Magistrate Judge

The above-entitled matter came on for hearing before the undersigned Magistrate Judge of the District Court on August 15, 2006, on the pretrial motions of The United States of America (the Government) and Defendant James Brock Williams. This matter is scheduled to be tried before the Honorable Chief Judge James M. Rosenbaum, United States District Court for the District of Minnesota. The case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.

## I.    INTRODUCTION

On July 10, 2006, Defendant was named in a one-count indictment charging him with Possessing with the Intent to Distribute Crack Cocaine, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A). This Court held a pretrial motions hearing on August 15, 2006, at which defendant was present and represented by counsel. Both parties filed pretrial motions. One witness testified for the Government at the hearing: St. Paul Police Narcotics Officer Mark

Nelson. The following exhibit was marked and admitted by the Court for the purposes of the hearing: Exhibit #1 - St. Paul Police Department Miranda Rights Form, dated 6/27/06.[1] Both parties argued their respective positions after the motions hearing. The Court addresses the parties' dispositive motions in this Report and Recommendation. Defendant's non-dispositive motions are addressed in a separate Order.

## II.   FINDINGS OF FACT

1. Officer Mark Nelson (Nelson) has been a St. Paul police officer for seven years. For over a year now, Nelson has been assigned to the Narcotics Unit.

2. In June of 2006 a confidential reliable informant (CRI) with whom Nelson worked, made a call to Defendant Williams (Williams) regarding an alleged delivery of illegal drugs. Nelson was not present for the initial call between the CRI and Williams, but Nelson found the CRI to be reliable in many prior investigations. Nelson listened to subsequent calls between the CRI and Williams, hearing most of what the CRI said and some of what Williams said.

3. Specifically, on June 27, 2006, the CRI called Williams and arranged a delivery of 4.5oz. of crack cocaine by Williams in exchange for $3,000 from the CRI. However, Williams did not know that Nelson arranged for this to be a controlled delivery, wherein money would not change hands. In fact, the CRI was never given government funds.

4. The CRI and the vehicle the CRI used were searched. There were no drugs or weapons found on either the CRI's person or in the vehicle.

---

[1] Officer Nelson conceded there was a mistake as to the proper date on the form. The top of the form indicates a date of 6/27/06. Yet, the date on the bottom of the form is 6/28/06. It is clear from the factual presentation that the proper date is 6/27/06.

5. The deal was set to happen in St. Paul at a fast food restaurant. However, the location changed and the CRI gave Williams directions over the phone for the CRI's house.

6. The officers moved their surveillance teams to the CRI's house. Within minutes of the CRI's arrival, Williams arrived on the scene. The officers observed Williams leave the car he was driving and approach the CRI.

7. The officers used a broadcast device to listen to the conversation between the CRI and Williams. Williams said, "I got it." The CRI said he was going to get the money. Shortly thereafter, the two walked away from one another with Williams going back to the car he was driving and the CRI acting like he was going to get the money. The CRI called Nelson on his cell phone and said that Williams had the drugs and the drugs were in a black, plastic bag. The CRI also gave the predetermined signal for the bust.

8. Williams returned to the driver's seat of the car. There were two women in the car as well.

9. The police officers moved in, the door was opened and Williams was removed from the car. Through the opened door the officers saw a black, plastic bag on the floor by the passenger's seat.

10. Williams was placed in handcuffs and arrested, along with his two female companions. He was searched and a small amount of cocaine was found on his person.

11. The car was searched, seized and towed, per St. Paul Police Department policy. The crack cocaine found in the plastic bag on the floor was seized as well.

12. Williams was brought to the Law Enforcement Center and placed in an interview room. Officer Nelson and DEA Special Agent Murphy were present in the interview room.

Williams was no longer in handcuffs. Nelson and Murphy were in plain clothes. They were not armed while in the room.

13.   Nelson told Williams why he was there and what they found in the car. He then presented a form to Williams which lists all his rights pursuant to *Miranda* (Ex.#1). After reading each of the *Miranda* rights, Nelson stopped and Williams indicated he understood the particular right by initialing the form. Then, Nelson asked him to read out loud the bottom of the form, which states:

> The above rights have been read to me. I have initialed each paragraph to show that I understand each of my rights. I have received a copy of this form.

14.   Williams signed the form and agreed to speak to the law enforcement officers. There is no evidence of coercion, threats, physical force or promises made by the officers. The interview took approximately 10 minutes.

## III.   DISCUSSION

### A.   Probable Cause

Defendant argues that the officers lacked probable cause to open the door of the car he was driving, thus making the seizure of the drugs and the statement improper. The Court disagrees.

Courts look to the totality of the circumstances known to the officers at the time of arrest in determining whether probable cause to make a warrantless arrest existed. Illinois v. Gates, 462 U.S. 213, 230-39 (1983). Probable cause exists at the time of arrest where a person of reasonable caution would believe the person to be arrested had committed an offense. Dunaway v. New York, 442 U.S. 200, 208 n.9 (1979) (collecting cases). Courts should give due weight to the inferences police officers could draw from their experience. United States v.

Wilson, 964 F.2d 807, 809 (8th Cir. 1992). "In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent [persons], not legal technicians, act." Brinegar v. United States, 338 U.S.160, 175 (1949). Probable cause does not require that police are certain a suspect has engaged in criminal activity, only that there is a substantial chance of criminal activity." Gates, 462 U.S. at 244. As the Gates Court noted, "innocent behavior frequently will provide the basis for a showing of probable cause." Id. at 245. Further, probable cause is determined by judging the collective knowledge of the officers, rather than what any single officer knew at the time of arrest. United States v. Wells, 347 F.3d 280, 287 (8th Cir. 2003).

Here, Officer Nelson knew that a drug deal was planned that day between the CRI and Williams. They heard at least most of the conversations arranging the drug delivery. When the first meeting place did not work out, the CRI gave Williams directions to his house instead. The officers observed Williams arrive as arranged. He was not a passenger, but the driver of the car. He got out and approached the CRI. In other words, the officers observed behavior consistent with the arrangements made for the drug deal. Then, the officers heard Williams say, "I got it." The CRI said he'd get the money; a response appropriate to a drug deal. The CRI told the officers that Williams had the drugs and they would be found in a black, plastic bag. While the officers were not close enough to discern whether Williams was carrying anything, they now had more information consistent with a drug deal.

If the officers had not heard the CRI talk about the arrangements, had not seen the events at the scene or heard the comments made by Williams in context of everything else they knew, the total picture might not point to a criminal venture. But in deciding probable cause it is the

Court's role to view all the circumstances and determine whether there is a substantial chance of criminal activity. Based upon the facts the officers had in their collective grasp leading up to the controlled delivery and at the scene, there was probable for the officers to approach Williams, open the door and remove him from the car. At the same time, they observed a dark, plastic bag just as described by the CRI, within his reach in the car. Certainly, this gave them more than ample evidence to arrest Williams. Accordingly, the motion should be denied.

      B.      <u>Automobile Exception</u>

The remaining question is whether officers could lawfully seize evidence from Williams' vehicle. Officers may undertake a warrantless search of a vehicle, under the automobile exception, when those officers have probable cause to believe that the vehicle contains contraband or other evidence of a crime. *United States v. Ross*, 456 U.S. 798, 808 (1982). Probable cause is evaluated according to the totality of the circumstances, including the collective knowledge of officers working together at the scene. *United States v. Wells*, 347 F.3d 280, 288 (8th Cir. 2003).

Where a suspect drives a vehicle to the site of an expected drug transaction, for the purpose of selling drugs at that site, officers have probable cause to search the vehicle for drugs. *United States v. Horne*, 4 F.3d 579, 585 (8th Cir. 1993); *cf. United States v. Kennedy*, 427 F.3d 1136, 1140-41 (8th Cir. 2005) (holding that officers cannot search the vehicle of a known drug dealer without factual details linking the vehicle to the time and place of a drug transaction). Once probable cause is established, officers may proceed to search the vehicle, even if that vehicle has already been impounded or placed in police custody. *Michigan v. Thomas*, 458 U.S. 259, 261 (1982) (per curiam). And when officers carry out a search under the automobile

exception, they may search containers in the vehicle that may contain the suspected contraband. *Ross*, 456 U.S. at 818-19.

As determined above, officers had probable cause to believe that Williams had arrived at a particular site for the purpose of selling drugs. They were given reliable information that the drugs were contained in a black, plastic bag. The bag was within the passenger compartment of the car Williams drove to the drug deal. The officers found cocaine on Williams' person as well. Given these facts, the officers had ample cause to search the vehicle and to seize the bag. The scope of the search, therefore, properly extended to the bag in which the drugs were wrapped on the passenger side of the car.

C.   Statement

The Fifth Amendment prohibits the use of self-incriminating statements obtained during custodial interrogation, unless there is a voluntary, knowing and intelligent waiver of the defendant's *Miranda* rights. Miranda v. Arizona, 384 U.S. 436 (1966). Under *Miranda*, before questioning suspects, law enforcement officials must inform them that: (1) they have the right to remain silent; (2) their statements may be used against them at trial; (3) they have the right to the presence of an attorney during questioning; and (4) if they cannot afford an attorney, one will be appointed. Id. at 478-79. The need to give a *Miranda* warning arises when: (1) the defendant is in custody; and (2) is interrogated. See United States v. Griffin, 922 F.2d 1343, 1347 (8th Cir. 1990).

An individual may waive the protections provided by *Miranda* if the waiver is made "voluntarily, knowingly and intelligently." Miranda, 384 U.S. at 444. A waiver is knowing, intelligent and voluntary if it was the product of a free and deliberate choice by the defendant who has a full awareness of both the nature of the right being abandoned and the consequences

of the decision to abandon it.  Moran v. Burbine, 475 U.S. 412, 421 (1986).  Only if the totality of the circumstances surrounding the interrogation reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.  Id.

The Court is well aware that an explicit statement of waiver is not required to support the claim that a knowing waiver was made of a defendant's *Miranda rights*.  North Carolina v. Butler, 441 U.S. 369, 375 (1979); Thai v. Mapes, 412 F.3d 970 (8th Cir. 2005) (defendant need not make an express waiver of *Miranda* rights, such a waiver may be inferred).

In this case, Williams was brought to an interview room without restraint.  The interrogating officers were not armed.  They were in plain clothes.  No promises or threats were made, nor physical force used.  Nelson explained why he was there and went through each of Williams' *Miranda* rights.  Williams indicated he understood each right and agreed to talk.  The interview lasted only 10 minutes.  Clearly, then, the officers did not coerce Williams into making a statement.  The statements given by Williams were knowingly, voluntarily and intelligently made.  Accordingly, his motion to suppress his statement should be denied.

**IV.   CONCLUSION**

Based upon the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.  Motion to Suppress All Evidence Obtained Through Unlawful Searches and Seizures (Doc. No. 14) be **DENIED;**

      2.      Motion to Suppress Statements Made by Defendant (Doc. No. 13 ) be **DENIED.**

Dated:  August 24, 2006                        s/Jeanne J. Graham

                                                  JEANNE J. GRAHAM
                                                  United States Magistrate Judge

Pursuant to D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by September 14, 2006.  A party may respond to the objections within ten days after service thereof.  Any objections or responses filed under this rule shall not exceed 3,500 words.  A District Judge shall make a de novo determination of those portions to which objection is made.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals for the Eighth Circuit.  Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.